Okay, we've got our final argument today and for our week, and it is case number 23-30298, and we have MGMTL v. Strategic Technology Institute, and we will begin with, I hope I'm getting it right, Micah Fincher? Good morning. May it please the Court, my name is Micah Fincher, and I represent Strategic Technology Institute in this matter. I've reserved five minutes for rebuttal. Strategic Technology respectfully requests that this Court reverse and render judgment in its favor for at least three reasons. First, we'll talk about copyrightability and related legal issues and how they're legal questions that will be decided by the Court, not the jury. Second, we'll turn to the plaintiff's failure to prove damages on its trade secrets claim, and why, because that's a necessary element of that claim. Judgment should have been rendered in Strategic Technology's favor on that claim. Finally, the third argument we'll discuss this morning is statutory damages. That defense barred both copyright infringement and trade secret claims in this case as a matter of law, and again, we're asking for judgment in Strategic Technology's favor on those claims. To begin with, the copyrightability and related issues. Those issues are decided in the context of the abstraction, filtration, comparison test, which is the governing legal standard for software copyright infringement claims. And the first two steps, abstraction and filtration, are incredibly important in the software context because software often involve information or factual issues that are on the outer limits of what's protectable under copyright law. So you need to get that abstraction and filtration steps right so that you're not doing a comparison to unprotectable elements that give a software copyright owner greater rights than they would otherwise have under copyright law. And keep in mind that this test not only implicates the infringement analysis, it also implicates the statute of limitations analysis because each infringement under copyright law has its own statute of limitations, and it also implicates the fair use analysis. Remember, one of the statutory factors for fair use is the amount and substantiality of the portion used, but that's viewed through the lens of what's already been abstracted and filtered out when you're doing that fair use step. Now, turning to the facts of this case, keep in mind, the software that we're talking about is software that is designed to generate letters and forms that are regulated under Department of Defense regulations. The Department of Defense at the time that are relevant to this case had a database called JPAS, Joint Personnel Adjudication System, that has information for the folks that have security clearances at their military bases, right? And so from time to time, those folks need to send in letters to renew their clearances. They need NDAs so that they can access special materials, and Marines would, in the security office, look at the regulations, prepare those forms manually, and have folks sign off. What Menes did, there's three computer programs that are relevant to this case, right? So Mr. Menes, one of the principals of the plaintiff, while he's a Marine, he develops a database tool to automate this. It works with JPAS. It downloads the information from JPAS. It creates a screen for you to put the information, the name of the person, the date of birth, social security number, clearance, that sort of information, and then it outputs the form in compliance with all the regulations under the DoD. I'm talking about margins, font size, contents of the forms, right? He does that as a Marine on his Marine laptop, and he uses that to perform his functions as a Marine, right? That's a government work. The second work that's relevant here is the SMART program. Mr. Menes connects with his uncle by marriage, Mr. Imel, pays him $500 plus a stake in an LLC company they create to create a visual basic program that makes it easier for other people that Menes has created. Mr. Imel writes 26,000 lines of visual basic code, and they register that copyright, right? The third program that's relevant here is the web-based tool that Strategic Technology created. It's 3.1 million lines of code to create and operate this web-based version, but all three of them connect with JPAS. All three download data from JPAS, input it into forms that are regulated by DoD regulations, and are meant to comply with those rules, right? And so when we're looking at the abstraction infiltration steps in the copyrightability analysis, we begin with the literal elements, right? So we're talking about literally the source code at issue here. That was what was actually submitted to the Copyright Office. That's what they looked at. We do not dispute, Strategic Technology does not dispute that that source code is entitled to copyright protection. I think where there's a departure is when we're talking about what level of copying can constitute infringement of that code. And so it's well established that words and short phrases are not copyrightable subject matter. That's section 102B, right? The plaintiff's expert admitted that he could not find a single line in the 3.1 million lines of code that Strategic Technology developed, couldn't find a single line of the SMART software in that code, right? But nevertheless he still concluded that Strategic Technology's code copied or was similar to the visual basic code of SMART because what he points to are these words and short phrases. These things are excluded from subject matter protection under copyright law to justify this conclusion that there was copying. But the reality is those words or short phrases would appear in any software program that's directed to the body of DOD regulations that these software programs were designed to address. And then in any event, he also points to, look, there's a misspelling that appears in the SMART program. That misspelling also appears in the Strategic Technology program. What that proves is that Strategic Technology had access to SMART, which is undisputed. SMART was provided to Strategic Technology by Mr. Menes in the course of their business relationship. That does not prove infringement. So there is no, there's no copying of the literal elements. Turning to the non-literal elements, we have two important, we talk, there's a lot in our brief, but I just want to highlight two important aspects of the non-literal elements in the abstraction and filtration steps, right? When we're talking about non-literal elements, what we're talking about are screens and menus that the computer generates when it's running the source code, right? And when you're looking at those screens, you have to filter out things like government works, not copyrightable subject matter works, aspects of the screens that are not protectable. And here, all three of the software, the database tool that Menes created, the SMART tool, the web application that Strategic Technology created, they're all designed to connect to JPAS and put that information into the government forms and output a form. Those government regulations are government works that are not protectable, the forms are not protectable, and Menes's original version is not protectable because he created it while he was a Marine, right? And when he's on the stand, this is at the record at 5210, we show him one of the screens and we're asking about it, he can't tell us whether that screen is from SMART or from his pre-SMART database tool. They look the same, and of course they do, because they asked for the same information because they're creating the same forms, right? So the second thing to consider with respect to the non-literal elements that's particularly relevant here is other doctrines like the merger doctrine, like Senefair, these are issues of efficiency or external factors that drive how those screens or menus are organized. And the engineering dynamics case states basically kind of a balancing test when you're looking at what is the copyrightability or scope of copyright for some of these non-literal elements, and what this court said in that case is we're going to look at the utilitarian function of those non-literal elements and compare it to the expressive purpose of those non-literal elements, those screens, right? In this case, we have a software that could not be more utilitarian, right? And so all of the screens exist to perform a function. They are methods of operation that are excluded from the subject matter of copyright, or in any event, matters of considerations of efficiency or external factors like compliance with the DOD regulations are dictating what the contents of the software. Now, if you want to look at what the screens look like, they're in the record excerpts. If you look at tab nine, we have several exhibits that show what those screens look like. We couldn't fit them all in the record excerpts, but they're also in the record. You can look at them there. And I want to now turn to our fair use argument, and obviously the case that both parties spent a lot of time looking at was Google versus Oracle. When you read that case, there's a lot of daylight between the majority and the dissent in that case. There was a dissent by Justices Thomas and Alito in the Google case, but there was agreement by the entire court on the following issues. Number one, fair use is a mixed question of fact and law where questions of law predominate. Number two, whether each factor, each of the four statutory factors relating to fair use favors fair use, that itself is a question of law. And then finally, the balancing of all four statutory factors to determine whether there is in fact fair use, because you could have some factors go in one direction and other factors go in the other. You don't have to have all four pointing in the same direction in order to find fair use. The weighing of all those factors is also a question of law, right? And so the dissent and the majority agree on those issues, even though they ultimately disagree on how they should apply to the facts of the case. Just to draw some parallels here, in that case, Google, turning to the first factor, the purpose and character of the use, Google was found to have created a transformative work by copying 11,500 lines of declaratory declaration code. And the reason why it was transformative is they were maintaining that code base because folks were familiar with it, but they had rewritten the implementing code. The underlying code was their own work in their own coding language. That's what we have here. We have a web application that's designed to perform the same functions, have the same features, and be familiar to folks that were familiar with SMART, but we wrote our own underlying code to make that work. Whether the use is commercial or not is also considered in this factor, but that's not dispositive. The second is the nature of the copyrighted work. The jury found in our favor that the SMART program is factual and informational in nature. The third factor was the amount and substantiarity of the portion used. Google copied verbatim 11,500 lines of Oracle's code. The plaintiff couldn't find one line of code that we took. Now, there are similarities in the screens, but as I said earlier, the scope of protection for the screens is very narrow, and taken as a whole, we think the fair use applies here. And then finally, the effect on the potential market. Basically, the majority of Google said that Oracle, a multi-billion dollar company, could not enter the smartphone market. So there was no impact on the market based on Google's use here. We have a two-man shop that has never sold their software. Their software is not even certified under the Department of Defense software assurances program. If they sold it, it couldn't be installed on the equipment. And that brings us to no damages. They failed to prove damages on their trade secret claim. If you look at the judgment, Your Honor, there is nothing that the judgment says that strategic technology should or shouldn't do with respect to the trade secrets. In other words, the judgment does not modify the part's rights and obligations with respect to the plaintiff's trade secrets. That's a take-nothing judgment, right? It doesn't order us to do or not to do anything. It doesn't order us to pay damages on trade secrets. They point to the fact that the jury found that there was willful misappropriation. An abundance of evidence on one element of a claim does not excuse you from proving up causation and damages. In the copyright context, Congress has said, look, we're going to give you—if you prove liability, we'll give you statutory damages. That does not apply to trade secrets. You still have to prove causation and damages the old-fashioned way, right? They didn't do that here. That's a take-nothing judgment. It should have been in our favor. Just very briefly, statute of limitations, the critical date was July 28, 2017. They point to several activities after the critical date. They say, hey, look, you continue to develop the program. Hey, there were meetings where you're doing offers to distribute the work. The jury found that there was no distribution of the work. And this is an important distinction between copyright law and patent law, Your Honor. In patent law, an offer to sell is in itself an infringement. You have a sale that's infringement, offer to sell is infringement. In copyright, that is not the case. And I see that my time is up. May I briefly finish my point and conclude? Well, you've saved time for rebuttal. Thank you. Talk more then. Thank you. All right. Camila Gauthier? Camila Gauthier. Thank you. Thank you. Okay. Good morning. Camila Gauthier on behalf of MGMTL. STI has asked the court to find the evidence so strongly and overwhelmingly points in favor of STI that the jury's verdict should be disregarded nine or ten times over. Of course, those contentions are meritless. I'll focus my time on the specific issues that STI just focused on a moment ago, copyrightability, fair use, and trade secret. So starting on copyrightability, on copyright, the requisite level of creativity is extremely low. Even a slight amount will suffice, the Supreme Court has said. And there's no dispute here that copyright protection extends to a software's visual screen displays. We heard a lot of focus just now as we did at trial about source code. The court need not even dive into that because part of the copying and a large part of what the jury was shown was the stark copying in the screen displays. The jury heard that SMART had in excess of 50 screens. And so because we talk about visual screen displays in their totality, we cannot look at one screen in isolation. We cannot pull out one text box, one word. We're looking at the totality of 50 screens that look almost identical. We heard a reference that some of the screens were in the record excerpts, STI's tab. I would just note that that was just an attachment to STI's expert's declaration that was filed as a record excerpt, right, so that was their own expert handpicking one or two screens. That does not show the court the totality of what the jury saw. The jury saw multiple trial exhibits for several hours going through, comparing the SMART screens side by side with PASS. The jury also saw numerous demonstrative visuals, and we walked the jury through and we showed them numerous alternate ways these more than 50 screens could have been designed, right? The jury saw and heard testimony that the software designer makes creative design choices in the way you select, arrange, layout, flow, organize, and do the word choice of more than 50 visual screens. STI says that Department of Defense regulations completely dictate the way SMART screens look. The record showed the opposite. The DoD does not dictate, mandate, or even recommend how screens must or should look. The jury heard that those design choices were MGMTL's vision. And second, I'd note that STI's argument is just like the losing one made to this court in Southern Credentialing, a 2020 case that dealt with copywriting a more than 50-page hospital credentialing packet. This court said there that, quote, while laws and hospital policies may dictate the contents of credentialing forms, Southern Credentialing's unique selection and arrangement of information exhibits creative expression. And that's what we have here. We saw a suggestion in the brief in a moment ago as well that there's some kind of connection or import from J-PASS, a government software. And I want to be clear that that's absolutely false, right? MGMTL's expert confirmed on the stand he was not looking at J-PASS in any way when analyzing and running information through SMART. These systems do not connect or import. J-PASS is just like a repository where you might look up someone's name or social security number. But there's no link or import the way we just heard a moment ago. We heard STI make the argument that copyrightability, whether there's any original expression, is allegedly a pure question of law. That is not something that this court has ever said. And I'll give you two examples where this court has said the exact opposite. In Aspen Tech versus M3 Tech, a computer software case, also following a jury trial, right, where we saw competing software experts just like we did at this trial, they approached differently what aspects of the software should be filtered out and compared. This court said, quote, the jury, as ultimate fact finder, was entitled to determine whether the copied aspects of the program were entitled to copyright protection. That's what the jury did here. And secondly, Apple Barrel Products, also from this court, quote, we do not express our own opinion as to whether Plaintiff's Show was sufficiently original or copyrightable, as that question is properly suited for the trier of fact. And here I also want to make sure to note that STI's own expert even conceded that there was some creativity and room for variation in the selection and arrangement in Smart's more than 50 visual screen displays. That concession is huge, because while we now hear that allegedly there's no protectable expression in the screens as a matter of law, that's not what STI's own expert said at trial. He even stunningly and boldly told the jury that he could have designed the software much better than MGMTL had. He said it violates best user interface design practices, right? So given those concessions, and I'm quoting a few lines from STI's expert's testimony, there is room for variation in the grouping and organization. Certainly there's some room for Mr. Minnis to change some things here. So there's a different way all the smart screen displays could have been designed? Obviously, yes. You can design them in a thousand different ways. Question, if we take all 40 or 50 of the smart screen displays in their totality, all the Is it your testimony there's no original expression in all of the smart screen displays put together? No, there's certainly room for some creativity, right? So given that we know we've got competing software experts, and even STI's expert acknowledges the original expression in the screen displays, it's clear that there's no support for the assertion that copyrightability is a question of law. This was a question for the fact finder. And seeing all the visual screens in front of them, they found substantial similarity in copyright infringement. And the last point I'll make on copyrightability is that the 11th Circuit, the only circuit that offers pattern jury instructions on computer software infringement, specifically instructs the jury in those pattern instructions that it is up to them to filter out the elements that the law does not protect and determine if there is substantial similarity between protected elements or not. And the district court followed those pattern instructions. So where the jury heard from competing experts, made credibility determinations, and STI's own expert conceded some expression in the screen displays, of course the verdict finding infringement was supported and should be affirmed. I'll now turn, as my colleague just did, to respond to what he had to say on fair use. That of course is an affirmative defense. At trial, STI completely denied copying at all. STI made pass from scratch, and that's a quote that they told the jury. The argument has pivoted. Now STI says that the near verbatim copying of dozens of dozens of visual screen displays in a commercial software product that STI only got access to under the false pretenses of a business relationship is a fair use. The jury rightfully saw through and did not credit that affirmative defense. In fact, importantly at STI's own request, the jury verdict form broke up the jury's fair use fact finding factor by factor. So we now know with absolute certainty that the jury said that, number one, widespread use of pass would harm the potential market for SMART. This factor, by the way, is one that this court recently said in Bell v. Eagle Mountain, a 2022 case, is often the most important factor in the fair use analysis. Second, on the character and nature of the use factor, the jury found that pass, which is a direct copycat of SMART, is not transformative. As the Supreme Court recently addressed in Andy Warhol Foundation, a defendant's claim like STI's that something is transformative cannot be permitted to swallow the copyright holder's exclusive right to make derivative works and adaptations. Transformative is only about when we have something that truly serves a manifestly different purpose. Pass serves the exact same purpose as SMART. In fact, STI's expert conceded at trial that pass, quote, does a very similar thing as  Moreover, this factor, the character and nature of the use factor, also asks us to consider whether STI's use of pass was commercial, of course it was, and fair use presumes good faith and fair dealing. The jury heard for many days that STI's conduct was anything but that. This court in Bell v. Eagle Mountain noted that character and nature of the use is often the second most important factor in the fair use analysis. And finally, the jury also made the fact finding that the copying was substantial. It was not qualitatively or quantitatively minimal. So again, the district court judge tracking the 11th Circuit pattern jury verdict form here on fair use, then had the jury balance the fair use factors. And upon balance, the jury found that STI did not meet its burden on fair use. And on Rule 50, the district court too gave lengthy reasons and deferred to and noted agreement with the jury's fact finding. Can you tell us why we shouldn't require the district court to render judgment in STI's favor on the misappropriation of the trade secrets because there were no actual damages? Certainly, Your Honor. So with respect to trade secret, right, we speak here about the Louisiana statute, right? So the Louisiana Uniform Trade Secret Act. Quoting from that, Louisiana revised statute 51-1434, if willful and malicious appropriation exists, the court may award reasonable attorney's fees. That is the only requirement of that statute. If willful and malicious misappropriation exists, that's exactly what the jury specifically asked that question found, and that's what the judgment says, right? So we heard a representation or suggestion as if damages are some form of requirement to even state a claim for misappropriation of trade secret. Of course, that's not true, right? We know, for example, a party could seek injunctive relief to prevent a threatened misappropriation, right? Of course, you would have no damages there if there's a threatened misappropriation, right? But you want to enjoin that. And notably as well, throughout this entire litigation and case, STI contested that MGMTL owned SMART. STI contested that it was a trade secret. Throughout this litigation, STI was actively listing pass for sale on the government's GSA schedule. So notably, our complaint and pretrial order also flagged a request for injunctive relief. Only near the very end of these years of litigation did STI withdraw the pass product from the GSA schedule, right? So again, limited to and focusing on that Louisiana revised statute, the only requirement is if willful and malicious misappropriation exists. That's what the jury found, and that's what the judgment says. And I'm not aware of any case, nor did I see STI cite one focused on that statute where the jury found willful and malicious misappropriation, right? And STI's ask, of course, is that this court would somehow change the judgment and declare STI, the willful and malicious misappropriator, the victor. That of course would be incorrect and inappropriate to do given that finding by the jury of willful and malicious misappropriation. Finally, we heard mention about the timeliness issue, a suggestion, right, of the statute of limitations defense. Of course, that's a classic fact question for the jury, what MGMTL knew or reasonably should have known. The discovery rule applies. This court has said that many times, including very recently in Martinelli v. Hearst newspaper. MGMTL sued July 28, 2020. The jury heard that MGMTL did not know of the misappropriation and infringement until after that date. MGMTL had no idea that PASS even existed. STI never used that word, never revealed that to MGMTL, even took efforts to block MGMTL's IP address so they would never learn of the existence of that competing product. And plus, even if that were not so, the jury also heard and saw evidence that STI was constantly making updates and new copies as late as 2019. So STI failed to prove its statute of limitations defense and the jury verdict was supported by the record in that regard. So with respect to, we saw many issues raised by STI, we didn't hear them all addressed in argument a moment ago. So we will rest on our brief on those and just note that of course, right, following a nearly two-week jury trial with competing experts, competing credibility determinations to be made in a verdict form that walked the jury through the fair use factors, through the copyrightability analysis, tracking what the 11th Circuit instructs courts to do with respect to copyrightability for computer software infringement. This court should affirm on all issues and uphold those jury's findings. And unless the court has any questions, I'll conclude there and ask that you affirm. Thank you. Thank you. We'll now hear the rebuttal. Counsel, real quick before you get started, I have a concern about the briefing that I was hoping you could clear up for me. Your friend on the other side just brought it up. So I noticed in your topside brief, in your blue brief, you say on page 46 that copyrightability is a question of law. You said that again this morning. In the brief, you cite two cases. One is a district court case from the Eastern District of Texas and the other is a district court case from the Northern District of Illinois. Your friend on the other side in the red brief says at least once, maybe three times, the Fifth Circuit has held the opposite. And then you don't say anything about it in the gray brief. And so I'm curious if you are just unaware of the fact that we have said this goes to the jury or what's going on. I'll say a couple things. The Aspen Technology case, which you just talked about, that's a non-precedential decision, 2014. This court's never cited it. No district court's ever cited it. And so I think that unreported decision was just frankly wrong. And when you look at the facts of that case, it's an employee that took materials from a former employer, including trade secrets. They take the software and the copyrightability issues were not heavily litigated in that case. And so I don't think the parties in that case were vigorously disputing those issues like they were in the district court cases that we cited. But one reason, perhaps, I wasn't obviously here and I don't know nothing about what's going on there, but one of the reasons that Aspen may be unpublished is because we had twice previously in both Lee and in Creations Unlimited said this is a question for the  And so we often don't publish the third case because we'd already said it twice in published cases. With respect to the copyrightability, at the end of the day, the jury can make determinations about are there some sort of external factors? Are there government regulations? The question that goes to the court and should go to the court is, do those regulations, for example, implicate the Senefair? Does the external factor exist is a factual question. Does those external factors implicate the Senefair doctrine? That's a legal question. And so I think like the copyrightability issue in the Google versus Oracle case, the jury found that there was an infringement, the district court in a copyrighted opinion vacated that infringement order and went the other way. I don't think that in any of this court's decisions, the issue of whether copyrightability goes to the jury or not was a holding of this court's decision. And in fact, what we're seeing, for example, in the Google case is these are decisions that go to the court and they should go to the court as a matter of policy because if you send copyrightability issues to the jury, we're going to have unpredictability. You're going to put technology innovators in Texas, Louisiana, Mississippi at a disadvantage and you're going to give software copyright owners a greater scope of protection than they should otherwise. Judge Haynes, I wanted to briefly address your question about the trade secrets issue. We heard a counsel from the other side read an incomplete portion of Louisiana Rides Statute 51-1434. She said all you have to prove is that the misappropriation was willful and malicious in order to be entitled to attorney's fees. But what she omitted was the last four sentences of that statute. The court may award a reasonable attorney's fees to, quote unquote, the prevailing party. That means you have to prove your claim, the underlying claim, be the prevailing party on that claim, and separately you have to prove that the misappropriation was willful and malicious. You may have a lot of evidence on the willful, malicious component, the misappropriation component. That's just one element of the claim. If you don't prove causation, you don't prove damages, you're not the prevailing party. They have a take-nothing judgment on that claim. The last thing I'll say is with respect to creativity, creativity is a low bar. But when we're talking about merger doctrine or fair use, those are all affirmative offenses. So those already assume that you've met the creativity standard. There's some sort of expression that would be otherwise protectable but for these affirmative offenses for merger, centerfair, or fair use. So just because they demonstrated some level of creativity in the way that they selected and arranged these works, that's not the end of the story. Those other factors still come into play. Thank you. Okay. Thank you to both sides. That concludes this case and it's under submission and it concludes.